UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| KENNETH R. HALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: 3:11-CV-72-TLS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The Plaintiff, Kenneth R. Hall, brought this action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner's final decision denying application for disability insurance benefits. On April 1, 2011, this Court referred the matter to Magistrate Judge Christopher Nuechterlein to prepare a report and recommendation. After the submission of the parties' briefs, Magistrate Judge Nuechterlein filed a Report and Recommendation [ECF No. 45] on April 3, 2012, recommending that the Court deny the Plaintiff's request for remand to the Administrative Law Judge (ALJ) for further proceedings. The Magistrate Judge reported that the ALJ did not err in discounting the opinion of Dr. Shobhit Negi, reasonably found that the Plaintiff was not credible, and committed only harmless error by failing to ask the vocational expert if his testimony conflicted with the Dictionary of Occupational Titles.

On April 13, the Plaintiff filed her Objections to the Report and Recommendations [ECF No. 46] requesting that the Court reject the Report and Recommendation findings and reverse and remand to the ALJ for a new hearing. The Defendant, on May 14, filed a Response to Plaintiff's Objections to the Magistrate Judge's Report and Recommendation [ECF No. 50].

Because the Plaintiff has objected to the Report and Recommendation, this Court must

"make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## BACKGROUND

Applying the familiar five-step process for determining whether an applicant meets the definition of disability contained in the Social Security Act, *see Craft v. Astrue*, 539 F.3d 668, 673–74 (7th Cir. 2008); 20 C.F.R. § 404.1520, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since his alleged onset date, had severe mental and physical impairments that did not meet a listing, and maintained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), as long as he had the opportunity to sit or stand; only occasionally climbed stairs and ramps, balanced, stooped, crouched, crawled, or kneeled; never climbed ladders, ropes, or scaffolds; and was only required to understand, remember, and carry out simple, but not detailed or complex, instructions. Further, the ALJ found that the Plaintiff could maintain attention and concentration to perform simple one to two-step tasks for two hours at a time without requiring redirection to task, but could only have occasional and superficial interaction with co-workers and supervisors. In arriving at this RFC, the ALJ gave no weight to the opinion of Dr. Negi, the Plaintiff's treating psychiatrist, that he had very serious limitations in different aspects of social interaction and sustained concentration and persistence. The ALJ also afforded limited weight to the Plaintiff's own statements about his limitations due to psychological problems and physical limitations,

2

finding that his statements were not credible. The ALJ determined, based on the testimony of a vocational expert, that the Plaintiff's RFC did not permit him to perform his past relevant work, but that he could perform other jobs that existed in significant number in the economy, thus denying the Plaintiff's claim at step five of the analysis. The ALJ did not ask the vocational expert whether his testimony was consistent with the DOT.

The Appeals Council denied the Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner, *see* 20 C.F.R. § 404.981, and the Plaintiff initiated a timely action for judicial review. The Report and Recommendation, the Plaintiff's Objections, and the Defendant's Response to Plaintiff's Objections raise the following issues for this Court's consideration: (1) whether the ALJ properly evaluated the medical opinion of Dr. Shobhit Negi, the Plaintiff's treating psychiatrist; (2) whether the ALJ properly evaluated the credibility of the Plaintiff's testimony regarding his symptoms and limitations; and (3) whether the ALJ erred by failing to ask the vocational expert whether his testimony conflicted with the Dictionary of Occupational Titles.

## DISCUSSION

A reviewing court will affirm the denial of disability benefits so long as the ALJ's decision is supported by substantial evidence, meaning evidence "sufficient for a reasonable person to accept as adequate to support the decision," and the court will not reweigh evidence or substitute its judgment for that of the ALJ. *Ketelboeter v. Astrue*, 550 F.3d 620, 624 (7th Cir. 2008) (internal citation omitted). The ALJ must build a "logical bridge" between the evidence and his conclusions. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). Even if "reasonable

minds could differ" about whether a claimant is disabled, the Court will affirm the ALJ's denial of benefits so long as the decision has adequate support. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quotation marks omitted).

To receive disability benefits under the Social Security Act, a claimant must be "disabled" as defined by the Act. 42 U.S.C. § 423(a)(1)(E). A claimant qualifies as disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, a claimant's physical or mental impairment or impairments must be of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

A claim of disability is determined under a five-step sequential analysis. *Craft*, 539 F.3d at 673.

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's [RFC] and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Id.* at 674. The applicant bears the burden of proof in each of the first four steps. *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). The government bears the burden of proof at the

fifth step and must present evidence establishing that the applicant possessed the RFC to perform work that exists in a significant quantity in the national economy. 42 U.S.C. § 423(d)(2)(A); *Liskowitz v. Astrue*, 559 F.3d 736, 740 (7th Cir. 2009).

Here, the findings being challenged are those related to the ALJ determination of the Plaintiff's RFC, which is the work the Plaintiff could still do despite her physical impairments and limitations, and the questions posed to the vocational expert to determine if the Plaintiff could perform work that exists in significant numbers in the national economy.

**A.     Dr. Negi's Opinion**

The ALJ's decision references the medical source statement of Dr. Negi, which the ALJ characterized as "showing very serious limitations." (ALJ Decision 7, R. at 16.) The ALJ gave the opinion "no significant weight" in accordance with Social Security Ruling 96-5p because it contained "no narrative explanation or supporting chart/office notes or test results which could provide evidence for the conclusory statements in the exhibit." (*Id.*) The ALJ also stated that the record as a whole did not support such extreme limitations. Instead, the ALJ relied on the "very detailed and well-reasoned analysis" of the State agency medical consultants who provided an evaluation of the Plaintiff's psychological limitations. (*Id.*)

The Plaintiff argues that the reason provided by the ALJ—the lack of narrative explanation, supporting charts, or test results—is not supported by substantial evidence because it does not represent the entirety of Dr. Negi's mental health reports and records. The Plaintiff notes that the ALJ did not evaluate Dr. Negi's two extensive psychiatric evaluations, his treatment notes, and the psychiatric evaluations from his fellow mental health professionals at

5

the Bowen Center. The Plaintiff asserts that the Magistrate's Judge's Report and Recommendation, wherein the Magistrate Judge found that the ALJ provided good reasons for discounting Dr. Negi's opinion, does not recognize this lack of substantial evidence and, in addition, erroneously relied on justifications that the ALJ did not herself use in assigning no significant weight to Dr. Negi's opinion. The Plaintiff also asserts that it was an error of law for the ALJ to fail to consider the checklist of factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c) when evaluating the opinion of Dr. Negi, and that the Magistrate Judge's Report and Recommendation did not address this issue.

The Defendant argues that the ALJ followed the correct legal standard in evaluating Dr. Negi's opinion because she considered the checklist factors, even if she did not explicitly mention all of those factors. The Defendant argues that the Magistrate Judge's inclusion of factors not mentioned by the ALJ in consideration of Dr. Negi's opinion merely provided additional detail in support of the ALJ's conclusion, and that these observations were, in fact, made elsewhere in the ALJ's decision. With regard to the absence of any explanation, notes, and test results accompanying Dr. Negi's opinion, the Defendant argues that it was appropriate for the Magistrate Judge to accept the ALJ's statement because Dr. Negi was specifically asked to explain his conclusions in narrative form and failed to do so. The Defendant contends that the ALJ considered the other evidence cited by the Plaintiff in support of Dr. Negi's opinion, but then concluded that it did not support the stated limitations, and also asserts that the ALJ was not required to summarize every psychiatric evaluation.

An ALJ is tasked with evaluating opinion evidence when making a determination of disability. A treating physician's opinion is entitled to controlling weight if it is well-supported

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2). An ALJ must offer good reasons for discounting a treating physician's opinion. *Id.* Even when the treating physician's opinion does not deserve "controlling weight," the ALJ must consider certain factors—namely (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) how supportable the doctor's medical opinion is; (4) how consistent the doctor's opinion is with the record; (5) the doctor's specialization; and (6) other factors that might support or contradict the doctor's opinion—to determine what weight to give the opinion. *Id.*

The ALJ gave Dr. Negi's opinion, contained in a two-page Medical Source Assessment (Mental) Form, "no significant weight." (R. at 16; Ex. 22F.) In doing so, the ALJ noted that Dr. Negi was a treating physician, but found that his opinion was not consistent with the record as a whole for reasons "shown above in detail." (R. at 16.) Those reasons included the ALJ's findings regarding the Plaintiff's ability to engage in activities of daily living, to carry out monetary transactions, and to get along with friends and engage successfully in social activities, and the indications of moderate impairment from a Bowen Center psychiatrist's evaluation and psychologist Craig Nordstrom's consultative evaluation. The ALJ also noted that Dr. Negi had failed to provide any narrative explanation or supporting notes or test results with his opinion.

The Plaintiff asserts that the ALJ committed legal error by not explicitly addressing the checklist of factors under 20 C.F.R. § 404.1527(c)(2)–(6) in considering Dr. Negi's opinion. "It is true that [20 C.F.R. § 404.1527(c)(2)] requires the ALJ to consider those six factors, but his decision need only include 'good reasons' for the weight given to the treating source's opinion

7

rather than 'an exhaustive factor-by-factor analysis.'" *Hanson v. Astrue*, No. 10-C-0684, 2011 WL 1356946, at *12 (E.D. Wis. Apr. 9, 2011) (quoting *Francis v. Comm'r Soc. Sec. Admin.*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. Mar. 16, 2011)); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (finding that the plaintiff "cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion"); *Brown v. Barnhart*, 298 F. Supp. 2d 773, 792 (E.D. Wis. 2004) (stating that there is no "*articulation* requirement for each and every factor" and that "ALJs are not required to produce prolix opinions containing checklists from all of the regulations"). "Rather, the ALJ must sufficiently articulate her assessment of the evidence to assure the court that she considered the important evidence and to enable the court to trace the path of her reasoning." *Brown*, 298 F. Supp. 2d at 792. Here, the ALJ generally covered the ground of 20 C.F.R. § 404.1527(c)(2) and provided good reasons for the weight she assigned to the treating physician's opinion.

     The ALJ noted that Dr. Negi was a treating physician. A treating physician's opinion regarding the nature and severity of a medical condition is only entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence of record. *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002). As the ALJ noted, Dr. Negi's opinion regarding moderately severe to severe limitations did not itself provide supporting evidence; the doctor failed to complete the explanation portion of the form, and did not attach any notes or test results. With regard to the record as a whole, the ALJ cited inconsistencies with other evidence, which may provide good cause to deny controlling weight to a treating physician's opinion—provided the ALJ adequately articulates the reasoning for discounting the

opinion. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Ketelboeter v. Astrue*, 550 F.3d at 625. Here, the ALJ explained, by reference to an earlier portion of her Decision, that the Plaintiff's ability to concentrate and persist in tasks was moderate, as evidenced by the evaluations of a psychiatrist at the Bowen Center and psychologist who performed a consultative examination. The ALJ also highlighted the evidence in the record related to the Plaintiff's social interaction and functioning at a moderate level. These were the same areas of functioning assessed by Dr. Negi. Thus, the ALJ explained the inconsistency by pointing to specific evidence and created an accurate and logical bridge between the evidence and the result, allowing the court "to trace the ALJ's path of reasoning." *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000). The ALJ, in giving considerable weight to the State agency medical consultant's evaluation of the Plaintiff's psychological impairments, noted that it was a "very detailed and well-reasoned analysis" and that it "agree[d] in essence with this decision." (R. at 16–17.) The Seventh Circuit has noted that "in the end, it is up to the ALJ to decide which doctor to believe—the treating physician who has experience and knowledge of the case, but may be biased, or the consulting physician, who may bring expertise and knowledge of similar cases—subject only to the requirement that the ALJ's decision be supported by substantial evidence." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) (quoting *Micus v. Bowen*, 979 F.2d 602, 608 (7th Cir. 1992)) (quotation marks and ellipsis omitted). The Plaintiff's arguments are an invitation for this Court to reweigh the evidence and substitute its judgment for that of the ALJ, which is not a proper reviewing function. *See Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997).

In support of his argument that the ALJ did not evaluate the entirety of the Plaintiff's mental health records, the Plaintiff states that the ALJ failed to summarize Dr. Negi's two

psychiatric evaluations. The first was conducted in August 2009 when the Plaintiff was treated as an inpatient at the Bowen Center. The ALJ did address this evaluation in the context of deciding during step three whether the Plaintiff was disabled because his two, short episodes of decompensation satisfied the "paragraph B" criteria for mental impairments. Thus, the ALJ was plainly aware that the evaluation measured the Plaintiff's functioning during an episode in which the Plaintiff experienced a temporary worsening of symptoms and loss of function. In November 2009, Dr. Negi completed a second psychiatric evaluation. The Plaintiff asserted that the ALJ did not discuss any portion of this evaluation either. The ALJ, however, did discuss the findings from the evaluation. Specifically, the ALJ noted the following from the evaluation: that the Plaintiff angered easily, as evidenced by February 2009 battery charges; that his concentration was fair with some memory deficits; and that his global assessment of functioning score at that time was 55, which was indicative of moderate impairment. The ALJ considered these findings in relation to other findings in the Plaintiff's mental health record and found moderate limitations in his social functioning and his ability to concentrate and persist in tasks. The Plaintiff argues that another psychiatric evaluation conducted at the Bowen Center in July 2008 also showed serious mental problems, but that the ALJ did not discuss this evaluation or the evaluation of another doctor conducted during a period of hospitalization. Again, the Court's review of the ALJ's Decision reveals that the ALJ did discuss relevant findings from these evaluations to determine whether the Plaintiff had a disability at step three. The ALJ then referred back to this discussion when she determined that the record as a whole did not support Dr. Negi's conclusions regarding the Plaintiff's impairments. Contrary to the Plaintiff's assertions, the Court does not find the ALJ's review of the Plaintiff's mental health record to have been

selective. Because the ALJ's Decision has allowed this Court to follow her path of reasoning, and the Plaintiff's arguments amount to a request for this Court to reweigh the evidence and arrive at a different conclusion, the Plaintiff's objections to the Magistrate Judge's affirmation of the ALJ's assessment of Dr. Negi's opinion are overruled.

**B.      ALJ's Credibility Findings**

The Plaintiff argues that the ALJ's credibility findings with regard to his mental impairments are not supported by substantial evidence. The Plaintiff testified during his hearing that he was extremely depressed "as far as feeling like . . . I want to be dead . . . maybe once or twice a week now." (R. at 41.) He continued: "But, I just—don't know. Everyday is a bad day for me. I don't want to get out of bed. I can hardly get out of bed until ten or eleven o'clock in the day usually. I just feel like I have no purpose to get out of bed. I just feel like I ain't got nothing to live for." (*Id.*) The ALJ concluded that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of these symptoms was not credible to the extent they were inconsistent with the RFC. More specifically with regarding to the Plaintiff's mental symptoms, the ALJ wrote:

> The claimant's allegations of extreme limitations due to psychological problems cannot be given significant weight. The analysis in Finding 4 has shown that the claimant's limits in this are[a] are no greater than moderate. In particular, except for the brief periods when the claimant has been in crisis as an in-patient, there is no evidence in the psychiatrists' chart notes that the claimant has conveyed to them that, for example, he is debilitated by depression 2 days per week. But is it reasonable to suppose that when the claimant met with his psychiatrists or other mental health professionals he would have discussed the severe problems he now alleges. His failure to do so implies that the claimant's reports and testimony about those difficulties is unreliable. Other inconsistencies contribute to a lack of reliability as

>well. For instance, the claimant told the psychiatrist examining him in July 2008 that he had not used marijuana for 4 years when, in fact, tests showed he had.

(R. at 16.)

In assessing a claimant's credibility, the ALJ must consider several factors, including the claimant's daily activities, the degree of her pain or intensity of her symptoms, aggravating factors, medications, and treatment. 20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p. The ALJ is required to support his finding with specific reasons, *see Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009), and reviewing courts defer to that determination unless it is found "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). An ALJ may not ignore a claimant's subjective reports of pain or mental impairments simply because they are not fully supported by objective medical evidence, but discrepancies between objective evidence and self-reports may suggest symptom exaggeration. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 803–04 (7th Cir. 2005).

The Plaintiff argues that substantial evidence does not support the ALJ's assessment because, contrary to the ALJ's assertion, the Plaintiff has significant mental limitations even between mental breakdowns. As evidence, the Plaintiff points to Dr. Negi's November 2009 evaluation of the Plaintiff where he noted continued significant symptoms of depression. The Plaintiff argues that the ALJ failed to mention this evaluation in her Decision. As stated above, the ALJ did discuss the November 2009 evaluation, and concluded that it supported a finding of moderate restrictions. There is substantial evidence in the November 2009 report to support this conclusion, and the Court will not reweigh the evidence.

The Plaintiff also argues that, although he did not specifically state to his examining and treating mental health sources that he would miss one or two days of work per week, what he

told them nevertheless showed serious functioning problems. However, in support of this assertion, the Plaintiff points to Dr. Negi's conclusory opinion, which the ALJ excluded as unsupported by medical notes, charts, and tests and inconsistent with other substantial evidence.

Next, the Plaintiff argues that the ALJ improperly ignored Global Functioning Assessment (GAF) scores of 50, 53, and 20 in determining credibility, relying on only the highest score in his records, 55. The 53 GAF score the Plaintiff cites is contained in an evaluation in which the Plaintiff reported "moderate depressive symptoms." (R. at 575.) The ALJ noted this GAF score in consideration of the Plaintiff's RFC and found that it was indicative of moderate impairment. During the discussion of the Plaintiff's RFC, the ALJ also cited the earlier 50 GAF score, noting that it was just below the range of scores for moderate impairment. Although the ALJ did not specifically note the 20 GAF score, it was from a period of hospitalization—when the Plaintiff's symptoms were most severe—not from the period between his mental breakdowns. Because the ALJ was attempting to determine the extent of the Plaintiff's limitation outside his two brief episodes of decompensation, the 20 GAF score was not relevant.[1] Contrary to the Plaintiff's argument, the ALJ did not rely on one GAF score and ignore the other three scores when determining whether the Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were credible and consistent with the RFC.

The Plaintiff also challenges whether substantial evidence supports the ALJ's decision

---

[1] Episodes of decompensation are defined in the social security context as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Pr. 404, Subpart P., App. 1, § 12.00; *Larson v. Astrue*, 615 F.3d 744, 750 (7th Cir. 2010); *Zabala v. Astrue*, 595 F.3d 402, 405 (2d Cir. 2010) (stating that decompensation is a temporary increase in symptoms).

that his testimony about extreme limited physical abilities was inconsistent with the medical record. Specifically, he claims that the ALJ's dismissal of his testimony regarding pain was flawed and requires remand.

When questioning an applicant's credibility as to symptoms of pain, the ALJ must follow specific requirements set forth in S.S.R. 96-7p. First, the ALJ decides whether the pain is substantiated by medical evidence. *See* S.S.R. 96-7p at *2; *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). If the pain is not supported by objective medical evidence, the ALJ evaluates the effects of the complained-of pain on the individual's functional ability to work, taking into account the claimant's daily activities; his past work history and efforts to work; the dosage, effectiveness, and side effects of medication; the nature and intensity of the reported pain; medical evidence from treating physicians and third parties; medical evidence and laboratory findings; and the course of treatment. S.S.R. 96-7p at *3, *5; *see Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994).

Here, the ALJ undertook such an analysis. She wrote in her Decision:

> Although the claimant has alleged extremely limited physical abilities, he has testified and reported that he can sit for 1 hour at a time, can stand for at least 2 hours, can walk at least 1 mile, can climb a flight of steps, and can l[i]ft at least 25 pounds with each arm. (Ex. 10F, p. 4 and testimony). Allegations of significant fatigue are not persuasive in light of such abilities. The allegation of pain are [sic] also unpersuasive. One treating physician noted that the claimant acknowledged his pain was well-controlled and that he was feeling good and looking for work in November and December 2009 (Ex. 24F, pp. 3 & 4). That same treating physician pointed out that the claimant's lumbar degenerative disc disease is characterized as "mild" and has been since 2008 (Ex. 9F, p. 2 and Ex. 24F, p. 7). As discussed above, the claimant has consistently been able to perform almost all of his activities of daily living, including personal care. Most recently, the claimant has indicated his neck pain is being dealt with by his current medication, and his lumbar pain is also well-managed by current medication (Ex. 24F, p.1). However, even prior to that, cervical spine x-rays showed no evidence of extreme pathology (Ex. 9F, p.3). The claimant's ability to function well physically is supported by and through examination by the

physician who performed the consultative examination.

(R. at 16.) The Plaintiff does not dispute that he can perform the daily activities noted by the ALJ. His argument is that the ALJ did not acknowledge the evidence that he cannot sustain these activities, specifically forms completed by the Plaintiff and his ex-wife reporting how the Plaintiff's problems with pain and sleep made it difficult for him to sustain activities, especially on some days. The Plaintiff also criticizes the ALJ for relying on the one-time consultative exam of Dr. Rudolph.

The ALJ is not required to discuss every piece of evidence, but is instead required to build a logical bridge from the evidence to her conclusions. *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). The ALJ properly assessed the credibility of the Plaintiff's testimony regarding his physical limitations and pain in light of his daily activities and his medications and treatment. The consultative exam was only one piece of evidence the ALJ relied on to assess the Plaintiff's credibility and to conclude that he could perform work at a light exertional level with the option to sit or stand as necessary and only occasionally climb stairs and ramps, balance, stoop, crouch, crawl, or kneel; and never climb ladders, ropes, or scaffolds.

Overall, the ALJ's credibility determination reflects a careful consideration of the Plaintiff's daily activities and medical and treatment records and deserves deference. The Plaintiff's arguments go to the weight of the evidence. That this Court might weigh the evidence differently or arrive at a different conclusion does not mean that the ALJ applied the incorrect legal standard or that her decision is not supported by substantial evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

### C.      Vocational Expert's Testimony

The Plaintiff argues that the Magistrate Judge's Report and Recommendation improperly upheld the ALJ's step five findings because the hypothetical presented to the vocational expert differed from the RFC found by the ALJ. The Plaintiff argues that the Plaintiff's RFC required that he have the opportunity to sit or stand, but that the "ALJ never included any limitation or capability related to a sit/stand option in her hypotheticals to the [vocational expert]." (Pl.'s Objections 11, ECF No. 46.) The Plaintiff did not present this argument in his opening brief and, in any event, the argument is not supported by the record.

During the hearing, the ALJ asked the vocational expert what jobs existed using an RFC that included the ability to sit for six of eight hours, and stand and walk for six of eight hours. The expert offered three light, unskilled positions: press operator, folder, and production inspector. (R. at 47.) The ALJ then inquired if the person required "the option to sit or stand as necessary," how this would change the witness's answer. (*Id.*) The vocational expert responded that the press operator and folder position would be eliminated because standing was generally required on a frequent basis and they involved an inability to sit or stand. The vocational expert then testified that the production inspector position would still apply, but at reduced numbers, and that additional positions of packager and assembler would also apply. The ALJ relied on this testimony to find that the Plaintiff was able to perform the requirements of production inspector, packager, and assembler, all of which existed in significant numbers in Indiana and in the national economy.

The Plaintiff does not explain how asking a question about the "option to sit or stand as necessary" fails to encompass the restriction for the "opportunity to sit or stand," and he offers

no other objection to the Report and Recommendation findings regarding the step five analysis. This Court finds no reason to reject the Report and Recommendation findings and reverse and remand to the ALJ for a new hearings on the basis of the ALJ's reliance on the VE's testimony at step five.

## CONCLUSION AND ORDER

For the reasons stated above, the Court OVERRULES the Plaintiff's Objections to the Report & Recommendations [ECF No. 46] and ADOPTS the Report and Recommendation [ECF No. 45], as MODIFIED by the discussion contained in this Opinion and Order.

SO ORDERED on July 11, 2012.

                                             s/ Theresa L. Springmann
                                             THERESA L. SPRINGMANN
                                             UNITED STATES DISTRICT COURT
                                             FORT WAYNE DIVISION